**COURT OF APPEALS
DECISION
DATED AND FILED**

**October 29, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2321-CR**

Cir. Ct. No. **2016CF200**

STATE OF WISCONSIN

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

JONATHAN N. REIHER,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Waupaca County: VICKI L. CLUSSMAN, Judge. *Affirmed*.

Before Fitzpatrick, P.J., Graham, and Nashold, JJ.

¶1    GRAHAM, J. Jonathan Reiher seeks to withdraw his no contest pleas to two counts of second-degree recklessly endangering safety. He argues that there was no factual basis for the charges because he took some steps to mitigate the risk of danger that he caused by vandalizing a furnace that later

exploded. We agree with the circuit court that there was a factual basis for the charges and, therefore, that Reiher fails to demonstrate that plea withdrawal is necessary to correct a manifest injustice. Accordingly, we affirm.

## BACKGROUND

¶2     Reiher's landlord and ex-girlfriend, A.R., evicted him from a house that she owned following several incidents of alleged domestic abuse. Several days later, police responded to a complaint that the residence had been vandalized and found significant damage throughout the home.[1] One of the items that was damaged was a propane gas furnace located in the basement. Its exterior metal shell had been dented, and pieces of venting pipes that had been connected to the furnace were torn off.

¶3     Reiher later admitted to A.R. that he was responsible for vandalizing the residence and, also, that he was aware that his actions had caused a gas leak. It is undisputed that Reiher turned off the gas after he noticed the leak, and that he emptied the propane tank before he moved out of the house.

¶4     About six weeks after the house was vandalized, there was a large explosion in the residence that severely injured two men. The men later told the police that they were at the residence cleaning and making repairs, and that they turned on the gas so they could cook some brats. The explosion occurred shortly thereafter, and both men were severely burned. According to an officer from the

---

[1] Among other things, police observed that a window had been smashed out of a door; that the kitchen cabinets and appliances, bathroom sink, toilet, washer, dryer, and doorways sustained severe damage; and that holes had been punched in the drywall throughout the residence.

state fire marshal's office, the cause of the explosion was damage to the connection between the propane gas pipe and the gas regulator on the furnace. The pipe had been severed and as a result, when turned on, gas flowed freely into the basement.

¶5       Reiher was charged with three counts of first-degree recklessly endangering safety, two counts of misdemeanor battery, two counts of criminal damage to property, two counts of disorderly conduct, and one count of stalking. The State subsequently amended the counts of first-degree recklessly endangering safety to second-degree recklessly endangering safety. The difference between these charges is that both require a finding of criminal recklessness, but the first-degree offense also requires a finding of "complete and utter disregard for human life" while the second-degree offense does not. *See* WIS. STAT. § 941.30(1), (2) (2017-18).[2] For ease of reference, this opinion sometimes refers to second-degree recklessly endangering safety as "reckless endangerment."

¶6       On the eve of trial, Reiher and the State entered into a plea agreement. Pursuant to the agreement, Reiher would plead no contest to two counts of reckless endangerment and one count of misdemeanor battery, and the remaining counts would be dismissed and read in at sentencing. Reiher filled out a plea questionnaire in which he acknowledged, among other things, that "if the judge accepts my plea, the judge will find me guilty of the crime(s) to which I am pleading based upon the facts in the criminal complaint and/or the preliminary examination and/or as stated in court."

_____

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶7      The circuit court accepted Reiher's no contest pleas.  In so doing, the court did not expressly make a finding on the record that there was a factual basis for the charges.[3]  However, the court confirmed that Reiher went over the elements of each of the offenses with his attorney, and his attorney affirmed that Reiher understood the nature of the charges against him and the elements of the offenses.

¶8      During the sentencing hearing, both Reiher and his attorney acknowledged that Reiher was responsible for the damage to the furnace which resulted in the explosion.  However, Reiher's attorney took issue with a suggestion made during the proceeding that Reiher intended to cause that result.  It had been suggested that Reiher intentionally sabotaged the furnace in a way that would escape detection and was likely to lead to an explosion at some future date, but Reiher's attorney flatly rejected that suggestion:  "[T]hat's not what the State would have been able to prove, and that's why it's reckless conduct, recklessly endangering safety."  According to his attorney, Reiher "fully understands that by damaging the furnace, it caused a substantial risk of great bodily harm, and, unfortunately, that happened, and so that is why he's accepted the responsibility for that specific action."  However, his attorney argued that the steps Reiher took to mitigate the risk, including emptying the gas tank and shutting off the gas,[4] showed a lack of intent to cause injury.

---

[3]  Although Reiher points out that the court did not expressly make this finding during the plea hearing, Reiher clarified during the postconviction proceedings that that was not really the basis of his motion.  Instead, he explained that his motion was grounded in his assertion that there was no factual basis for the charges:  "[N]ow that we're here for the [postconviction] motion hearing, the entire record is obviously subject to review for establishment of a factual basis."

[4]  The attorney also asserted that Reiher had notified A.R. of the gas leak, and he repeats this assertion in his appellate brief.  However, Reiher points to nothing in the record establishing that he told A.R. about the leak until after the explosion had already occurred, when he was in jail on the charges.  To be sure, Reiher did tell the sentencing court, "I informed [A.R.], did
(continued)

¶9 Reiher personally addressed the court during the sentencing hearing. He told the court that he "took every step possible after the damage had occurred to make sure that nothing would happen," but he acknowledged that the damage he caused to the furnace was the "snowball that started the avalanche," and he accepted responsibility for causing the victims' injuries.

¶10 Then, following the imposition of sentence,[5] Reiher moved for postconviction relief seeking to withdraw his pleas to reckless endangerment for lack of factual basis. The court denied Reiher's motion based on its review of the complaint and testimony at the preliminary hearing. It explained that facts in the record were sufficient to establish a factual basis for all elements of the crime:

> I recall testimony regarding the extreme amount of damage that was caused to the residence. And I agree that even if the gas was turned off, that it was reasonable to believe that it would be at some point turned back on. And that it was foreseeable that this event would take place. And that that event could cause great bodily harm, which in fact it did cause in this particular case. There was great bodily harm caused to the victims. And I, again, believe that the elements had been met.

---

everything I could possibly do to make sure that nobody would be injured." But this is not consistent with the statement that A.R. gave the police immediately after the explosion. According to A.R.'s statement to the police, which is recounted in the complaint, Reiher told A.R. that he had turned off the electricity and gas when he moved out of the house. The complaint does not indicate that Reiher told A.R. why he turned off the gas, or that there was a leak.

[5] The court sentenced Reiher to two consecutive eight-year terms (consisting of four years of initial confinement and four years extended supervision) for reckless endangerment, and a concurrent nine-month sentence for battery.

**DISCUSSION**

¶11 Reiher argues that the circuit court should have allowed him to withdraw his pleas to second-degree recklessly endangering safety because there was no factual basis for those charges.

¶12 Before accepting a plea of guilty or no contest, the circuit court must "make such inquiry as satisfies it" that there is a factual basis to support the charge. WIS. STAT. § 971.08(1)(b); *see State v. Smith*, 202 Wis. 2d 21, 25, 549 N.W.2d 232 (1996). The purpose of the factual basis requirement is to protect a defendant from pleading to charges without realizing that his or her conduct does not actually meet the elements of the charged crime. *State v. Thomas*, 2000 WI 13, ¶14, 232 Wis. 2d 714, 605 N.W.2d 836.

¶13 A defendant who seeks to withdraw his plea after sentencing must establish that refusal to allow withdrawal of the plea would result in a manifest injustice. *Id.*, ¶16. To demonstrate a manifest injustice based on a lack of factual basis, a defendant must show by clear and convincing evidence that there is no factual basis to support the conclusion that the conduct he or she admitted to actually falls within the charge. *State v. Payette*, 2008 WI App 106, ¶25, 313 Wis. 2d 39, 756 N.W.2d 423. In reviewing a defendant's motion to withdraw a plea for lack of factual basis, "a court may look to the 'totality of the circumstances,' including the plea and sentencing records." *State v. Scott*, 2017 WI App 40, ¶30, 376 Wis. 2d 430, 899 N.W.2d 728 (quoting *Thomas*, 232 Wis. 2d 714, ¶18).

¶14 A circuit court's determination of a manifest injustice is reviewed for an erroneous exercise of discretion. *Thomas*, 232 Wis. 2d 714, ¶13. One way a circuit court can erroneously exercise its discretion is by applying an "erroneous view of the law." *State v. Martinez*, 150 Wis. 2d 62, 71, 440 N.W.2d 783 (1989).

6

In this case, Reiher's arguments turn on the proper interpretation and application of the statutory definition of "criminal recklessness," and therefore the question is whether the court erroneously exercised its discretion by incorrectly interpreting this statute. Statutory interpretation presents a question of law that we review de novo. *Nowell v. City of Wausau*, 2013 WI 88, ¶19, 351 Wis. 2d 1, 838 N.W.2d 852.

¶15    The elements for second-degree recklessly endangering safety are that (1) the defendant endangered the safety of another human being, and (2) did so by criminally reckless conduct. WIS. STAT. § 941.30(2); *see also* WIS JI—CRIMINAL 1347. "Criminally reckless" conduct is defined as conduct that creates "a risk of death or great bodily harm to another person," where the risk was "unreasonable and substantial," and where the defendant was "aware" of that risk. WIS. STAT. § 939.24(1); *see also* WIS JI—CRIMINAL 1347.

¶16    Reiher argues that his conduct was not "criminally reckless" because he undisputedly took some steps—turning off the gas and emptying the tank—that reduced the immediate risk of death or great bodily harm. He makes this argument now despite his attorney's acknowledgement during sentencing that Reiher's conduct had in fact caused a substantial risk of great bodily harm. Reiher argues that when he left the residence, there was "no active risk … because the flow of gas had been stopped and the propane gas tank emptied." As we understand his argument, Reiher contends that he could not as a matter of law be found guilty of reckless endangerment because the risk was no longer "unreasonable and substantial" after he took those actions.

¶17    We disagree with Reiher's interpretation and application of the criminal recklessness standard found in WIS. STAT. § 939.24(1). It cannot be

7

reasonably disputed that Reiher created an unreasonable and substantial risk of harm when he vandalized the furnace, which caused the gas leak. And his subsequent actions did not "eliminate" that risk as he now contends. In his appellate briefs, Reiher appears to acknowledge that the furnace had to be repaired before it could be safely used. Reiher did not repair the furnace, and there is at minimum a fact question as to whether it continued to pose an "unreasonable and substantial" risk, despite what he characterizes as an attempt to mitigate that risk. Reiher fails to identify any legal authority for the proposition that actions that mitigate a risk the defendant has created provide a complete defense to second-degree reckless endangerment.[6] *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633, 642 (Ct. App. 1992) (we do not consider arguments when they are "unsupported by references to legal authority").

¶18   Reiher also advances two arguments that appear to be based on concepts borrowed from tort law. Namely, he argues that there was no factual basis because there was an "intervening factor" and because the risk to others was not "foreseeable." Neither argument is persuasive.

¶19   First, Reiher appears to argue that he cannot as a matter of law be guilty of reckless endangerment because there was an "intervening factor" between his conduct and the injury. According to Reiher, the intervening factor

---

[6] In fact, our supreme court has rejected a similar argument in the context of the more serious charge of first-degree reckless injury under WIS. STAT. § 940.23(1), which requires both "criminal recklessness" and circumstances showing "utter disregard for human life." *See State v. Jensen*, 2000 WI 84, ¶32, 236 Wis. 2d 521, 613 N.W.2d 170 (noting that the defendant's mitigating act of calling 911 after committing the crime "does not negate 'utter disregard' otherwise established by the circumstances before and during the crime," and that such an act of mitigation "may be considered by the factfinder as a part of the total factual picture, but it does not operate to preclude a finding of utter disregard for human life").

was that someone else filled the propane tank and turned on the gas and, without this intervening factor, it is unlikely that the explosion would have occurred. But again, Reiher does not point to any pertinent legal authority that discusses intervening factors, much less any authority that supports his argument that such intervening factors militate against a finding of criminal recklessness.

¶20    Second, Reiher argues that it was not "foreseeable" that someone else would fill the tank and turn on the gas before fixing the furnace. Therefore, he contends, he could not have been "aware" that he had created an unreasonable and substantial risk.

¶21    We disagree. We begin by noting that, although Reiher cites several cases for his premise that criminal recklessness depends on whether the risk was "foreseeable," none of the cases he cites actually discuss the concept of foreseeability.[7]  In any event, we need not decide whether that concept has any application in this context. As the circuit court explained, it was foreseeable that the gas tank would be filled and turned back on at some point. We agree with the circuit court. And indeed, the very action that Reiher relies on—that he turned off the gas after noticing the leak—demonstrates that he *was* aware of the risk that he caused.

¶22    At best, Reiher could have attempted to persuade a jury that it should not find him guilty because he attempted, however unsuccessfully, to mitigate the

---

[7] Reiher cites the following cases:  *State v. Lechner*, 217 Wis. 2d 392, 576 N.W.2d 912 (1998); *State v. Brulport*, 202 Wis. 2d 505, 551 N.W.2d 824 (Ct. App. 1996); *State v. Williams*, 190 Wis. 2d 1, 527 N.W.2d 338 (Ct. App. 1994), *rev'd*, 198 Wis. 2d 516, 544 N.W.2d 406 (1996); and *State v. Blair*, 164 Wis. 2d 64, 473 N.W.2d 566 (Ct. App. 1991). None of these cases discuss the concept of "foreseeability" in the context of criminal recklessness or any other context.

risk of an explosion, and because intervening factors led to that tragic result. And it is possible that he could have persuaded a jury to acquit him based on these facts. However, we will never know what a jury would have decided because Reiher opted to plead to the charges rather than taking his chances as trial.

¶23 Just because a jury might have acquitted Reiher based on this argument, that does not mean that there was no factual basis for the crime. "A factual basis for acceptance of a plea exists if an inculpatory inference can reasonably be drawn by a jury from the facts ... even if an exculpatory inference could also be drawn ...." *State v. Spears*, 147 Wis. 2d 429, 435, 433 N.W.2d 595 (Ct. App. 1988). We conclude that an "inculpatory inference" can be drawn from the record; accordingly, we reject Reiher's argument that he could not have been found guilty of reckless endangerment as a matter of law.

## CONCLUSION

¶24 For the reasons stated above, we agree with the circuit court's determination that there was a factual basis for the charges. Specifically, based on the facts of record, there was a factual basis that Reiher created "a risk of death or great bodily harm to another person," that the risk was "unreasonable and substantial," and that Reiher was "aware" of that risk. WIS JI—CRIMINAL 1347. Accordingly, we agree with the circuit court's determination that Reiher failed to establish that he was entitled to withdraw his pleas based on a manifest injustice.

*By the Court.*—Judgment and order affirmed.

Not recommended for publication in the official reports.